UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DAVID MICKELSON,

       Plaintiff,

v.                                  Case No. 2:04-cv-226
                                       CONSENT CASE

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

_____/

## OPINION

David Mickelson filed an application for disability insurance benefits under the Social Security Act on June 13, 2001, claiming that he had been disabled since June 1, 1999. See transcript of administrative proceedings at pages 33-35 (hereinafter Tr. at _____). A hearing was held before an Administrative Law Judge (ALJ), who determined that plaintiff was disabled from June 1, 1999, through April 12, 2001, but not thereafter. Tr. at 14-21. Plaintiff sought review of the Appeals Council, which denied his request for a review. Tr. at 5-7. Plaintiff maintains that the Commissioner erred when determining that plaintiff was no longer disabled after April 11, 2001. Accordingly, plaintiff filed this action seeking an order from this Court reversing the decision to terminate plaintiff's disability insurance benefits on April 11, 2001. The matter has been fully briefed and the parties have consented to Magistrate Judge jurisdiction.

Plaintiff was born on January 25, 1954, and has a somewhat sporadic work history which concluded with his employment at the Iron County Medical Care Facility from 1993 to 1999. Tr. at 36-38. Plaintiff is 5'11" tall and weighs 180 pounds. Plaintiff received his GED in 1972. Tr. at 39, 46.

Complaining of back pain, plaintiff was treated by Dr. Carlson in July of 1999. Tr. at 123. Dr. Carlson took plaintiff off work duty because of his condition and ordered a MRI. Tr. at 123. The MRI was conducted on August 11, 1999, and indicated that plaintiff had large central disk extrusion at L5-S1. Plaintiff was not happy with the treatment he was receiving from Dr. Carlson and requested a referral to Dr. Coccia. Tr. at 116. Dr. Carlson recommended conservative treatment and home exercises. Tr. at 113-115. On October 13, 1999, Dr. Carlson felt that plaintiff needed work conditioning and recommended that he be restricted to light duty. Tr. at 113. In October of 1999, plaintiff was examined by Dr. Singh, who recommended conservative treatment and indicated that if there was no improvement, he would schedule a diskogram. Tr. at 112, 272. Plaintiff underwent some injections, which were unsuccessful. Tr. at 105-107, 270. In December of 1999, plaintiff was seeing a physical therapist, who recommended that plaintiff return to work with limited duties. Tr. at 102. In December of 1999 and February of 2000, Dr. Carlson indicated he felt plaintiff was capable of performing sedentary work. Tr. at 96, 98. Plaintiff was unhappy with the assessment of Dr. Carlson that he could perform sedentary work, and sought a second opinion. Tr. at 96.

In February of 2000, plaintiff saw Dr. Kumar regarding his back pain, radiating pain, and urinary and bowel incontinence. Tr. at 177. An x-ray was performed on February 15, 2000, which showed disk extrusion L5-S1 within significant decrease in size as compared to the August 1999 x-ray. Tr. at 95. The x-ray also indicated that there was a protrusion in the right posterior paracentral region of L3-L4 and disk bulging at L4-L5. Tr. at 95. Dr. Ots concluded that plaintiff likely had a disk herniation. Tr. at 228-229. In May of 2000, plaintiff underwent an anterior diskectomy and interbody fusion to address his back pain. Tr. at 149-152. This procedure apparently went well and showed good alignment of the vertebral bodies and good position of fusion cages. Tr. at 167. In June of 2000, Dr. Ots indicated that plaintiff had more pain following the

procedure than was expected, but that the x-ray showed excellent alignment.  Tr. at 166, 227.

Plaintiff was placed on Vicodin and, later, OxyContin.  Tr. at 227.  In September of 2000, Dr. Ots

noted that plaintiff was much improved and getting better and better.  Tr. at 225.  In October of 2000,

x-rays showed excellent alignment and Dr. Ots indicated that plaintiff had gradually improved, but

still had back discomfort.  Tr. at 224.  In December of 2000, Dr. Ots indicated that plaintiff's

recovery had been slow and gradual, but that he was improving.  Tr. at 223.  Plaintiff continued to

complain of back pain.  Further x-rays continued to show "excellent" alignment.  Tr. at 162, 222.

Plaintiff underwent a series of injections in 2001, which only provided limited relief.  Tr. at 89, 90,

268, 269.  Dr. Ots recommended that plaintiff have a rhizotomy of the L4-L5 facet, indicating that

with the injections plaintiff had "shown improvement, up to 80%, and with the rhizotomy he

probably will do well."  Tr. at 220.  In April of 2001, Dr. Ots indicated that plaintiff had shown

significant improvement after the rhizotomy, but pain began to reoccur.  Tr. at 219.  Dr. Ots planned

to decrease plaintiff's narcotic prescriptions as his condition had improved.  Tr. at 219.  The record

indicates that plaintiff has suffered some depression and has a history of drug problems, including

serving a period of incarceration for drug offenses.  Tr. at 244-260.

       Following the ALJ's decision finding plaintiff was disabled from June 1, 1999,

through April 11, 2001, Dr. Ots sent a letter, dated December 13, 2002, indicating that plaintiff was

"in disabling pain, unable to work."  Tr. at 274.  This very brief letter is not accompanied by any

recent reports or examinations and does not indicate whether or not Dr. Ots felt plaintiff was disabled

from his work as a nurses aid, or totally disabled from all employment.  The ALJ found in her

decision of November 22, 2002, that:

> Beginning April 12, 2001, the claimant has the residual functional
> capacity to sit for 6 of 8 hours and stand and walk for 2 hours in an
> 8 hour day, lift, carry, push and pull less than 10 pounds frequently

and no more than 10 pounds occasionally.  Additionally, the claimant is limited to work which does not require repetitive bending or twisting or squatting.  Therefore, as of April 12, 2001, the undersigned finds the claimant has the residual functional capacity for a slightly limited range of sedentary work.

Tr. at 20.

Relying on the testimony of vocational expert Diane Briggs, the ALJ concluded that plaintiff was not capable of returning to his past relevant work.  The ALJ further relied on the vocational expert's testimony in concluding that plaintiff was capable of performing a limited range of sedentary work.  Tr. at 19.

Plaintiff contends that the ALJ's finding that his assertions were only "partially credible" is erroneous.  Tr. at 20.  Further, plaintiff maintains that the medical evidence supports a finding that he remained disabled following April 11, 2001, and that the Commissioner erred in finding he was not entitled to disability benefits after April 11, 2001.

Section 405(g) of the Title 42 of the United States Code provides that the Commissioner's findings are conclusive so long as they are supported by substantial evidence.  This Court's review is limited to determining whether or not there is substantial evidence in the record to support the finding that plaintiff was capable of performing work after April 11, 2001.  *See Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 851 (6th Cir. 1986).  Substantial evidence has been defined as more than a mere scintilla and must include such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  This Court is required to defer to the Commissioner's decision even if there is substantial evidence in the record to support an opposite conclusion.  *Key v. Callahan*, 109 F.3d 270, 273 (6th Circ. 1997).  This Court is not permitted to resolve conflicts in the record or examine the credibility of plaintiff's testimony.  *See Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987).  The

Court must affirm the ALJ's decision, unless the ALJ applied an incorrect legal standard or made findings of fact which are not supported by substantial evidence in the record. *See Walters v. Commissioner of Social Security*, 127 F.3d 525, 528 (6th Cir. 1997).

The Commissioner must follow a five-step sequential analysis in determining whether an individual is entitled to disability benefits. Plaintiff bears the burden of proof through the first four steps to prove his entitlement to disability benefits. "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary." *Preslar v. Secretary of Health and Human Services*, 14 F.3d 1107, 110 (6th Cir. 1994). The fifth step of the analysis requires the Commissioner to determine whether the claimant's impairments prevent him from doing his past relevant work and, if so, what other work exists in the national economy which accommodates plaintiff's residual functional capacity and vocational factors. In the instant case, it was at the fifth step that the Commissioner concluded that plaintiff was not entitled to disability benefits. Specifically, the Commissioner found that plaintiff was not capable of performing his past work, but that work did exist in the national economy of a sedentary nature that plaintiff was capable of performing. The finding required the Commissioner to conclude that plaintiff's testimony was not fully credible.

A review of the evidence of record establishes that there is substantial evidence to support the Commissioner's decision. A review of the ALJ's decision establishes that it is a thorough and well-reasoned evaluation of the medical evidence of record. The ALJ's decision concluded, after having reviewed the treating physicians' reports, that plaintiff was capable of performing some work. I have reviewed the entire medical evidence of record. Certainly, plaintiff suffers from a severe impairment which makes substantial gainful employment difficult. Furthermore, there is no question that plaintiff suffers significant pain as a result of his condition.

- 5 -

If I were reviewing the record *de novo*, I might have reached a different conclusion than the Commissioner.  I am, however, constrained to apply the law which requires that the decision of the Commissioner be affirmed if it is supported by substantial evidence.  My review of the decision of the ALJ and the evidence of record establishes that there is substantial evidence to support the decision of the Commissioner.

As outlined above, the doctors concluded that plaintiff had slowly and gradually improved following his surgery.  Tr. at 219-225.  This evidence supports the decision of the Commissioner.  Plaintiff's reliance on the December 13, 2002, letter of Dr. Ots does not support reversal of the Commissioner's decision.  This evidence was presented after the ALJ's decision and cannot be considered part of the record for purposes of substantial evidence review.  *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  Furthermore, the letter does not justify a remand.  There are no medical reports supporting the letter and it is a conclusory statement.  Plaintiff has not shown good cause for failing to acquire the letter before the ALJ issued her decision.  Moreover, because there are no medical findings to support Dr. Ots' opinion, I cannot find that the evidence is material and would have resulted in a different decision had the evidence been presented to the ALJ.  *See Sizemore v. Secretary of Health and Human Services*, 865 F.2d 709, 711 (6th Cir. 1988).

Accordingly, I find that the decision of the Commissioner is supported by substantial evidence and the decision of the Commissioner should be affirmed.


 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   September 6, 2005